UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVIAN PRISCILLA YOUNG,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. EDCV 15-1124-JPR<br><br>**MEMORANDUM DECISION AND ORDER AFFIRMING COMMISSIONER** |

**I.　PROCEEDINGS**

　　Plaintiff seeks review of the Commissioner's final decision partially denying her applications for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed April 7, 2016, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed.

**II. BACKGROUND**

Plaintiff was born in 1958 (Administrative Record ("AR") 205), obtained a GED (AR 33), and last worked in April 2009, as a nurse (AR 27, 32).

On April 30, 2012, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since April 1, 2009,[1] because of degenerative joint disease of the right hip, back pain, arthritis, and morbid obesity. (AR 13, 205-07, 209.) After her applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge. (AR 120, 127.) A hearing was held on July 23, 2013, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. (AR 24.) The ALJ issued a partially favorable decision on August 16, 2013, finding that Plaintiff became disabled on July 23, 2013, because of a "change[]" in her "age category" but was not disabled before then.[2] (AR 18; see also id. at 13.) Plaintiff requested review from the Appeals Council, and on April 10, 2015, it denied review. (AR 1-3, 8.) This action followed.

---

[1] Plaintiff later amended her alleged onset date to December 1, 2010 (AR 31), but both the parties and the ALJ continued to treat it as April 1, 2009 (see, e.g., AR 13).

[2] Plaintiff did not actually turn 55, placing her in the "advanced age" category, see 20 C.F.R. §§ 404.1563(e), 416.963(e), until later in 2013 (see AR 205); see Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010) (noting that ALJ has discretion to apply older age category before trigger date in "borderline" cases).

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

Claimants are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and her claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant

has sufficient residual functional capacity ("RFC")[3] to perform her past work; if so, she is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

The Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (AR 15.) At step two, he concluded that Plaintiff had "severe" impairments of "degenerative disc disease of the back" and "right hip degeneration." (Id.) At step three, he determined that Plaintiff's impairments did not meet or equal a listing. (AR 15-16.)

At step four, the ALJ found that Plaintiff had the RFC to perform light work, with specific exertional limitations as follows: (1) lifting and carrying 20 pounds occasionally and 10

---

[3] RFC is what a claimant can do despite existing exertional and nonexertional limitations. 20 C.F.R. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Plaintiff's RFC comprised only exertional limitations. (See AR 16.)

5

pounds frequently; (2) sitting for six hours and standing and walking for two hours in an eight-hour workday;[4] (3) performing occasional postural activities; (4) no climbing of ladders, ropes, or scaffolds; and (5) no working at unprotected heights or around dangerous machinery. (AR 16.) Applying Plaintiff's RFC, the ALJ found that she could not perform her past relevant work, all of which required medium exertion.[5] (AR 18, 39.)

At step five, the ALJ found that Plaintiff was not disabled before July 23, 2013. (AR 18-19.) The ALJ relied on the VE's testimony that given Plaintiff's RFC for light work "impeded by additional limitations," she could perform three light, unskilled jobs in the national economy: (1) "ticket taker," DOT 344.667-010, 1991 WL 672863; (2) "cashier II," DOT 211.462-010, 1991 WL 671840; and (3) "information clerk," DOT 237.367-018, 1991 WL 672187. (AR 19.) The ALJ noted that those jobs were merely a nonexhaustive list of "representative occupations" Plaintiff could perform. (Id.) Next, under a "direct application" of the Medical-Vocational Guidelines (the "Grids"), the ALJ found that Plaintiff became disabled on July 23, 2013, upon reaching "advanced age." (AR 18-19 (citing Rule 202.06 of the Grids).)

**V. DISCUSSION**

Plaintiff challenges the ALJ's finding that she could

---

[4] The ALJ reduced Plaintiff's standing and walking time specifically "to account for [her] hip problems." (AR 19.)

[5] In determining Plaintiff's RFC, the ALJ found that her testimony "concerning the intensity, persistence and limiting effects of [her] symptoms" was "not entirely credible." (AR 16-17.) Plaintiff does not challenge the ALJ's adverse credibility finding. (See generally J. Stip.)

perform other work in the national economy. (See J. Stip. at 5-10, 15-19.) First, Plaintiff contends that the ALJ erred in finding her capable of performing three jobs labeled as light in the DOT because the VE's testimony demonstrated that they are actually performed "in a sedentary manner" and thus required only sedentary exertion. (See id. at 5-10.) Plaintiff argues that because she can only do sedentary work, she should be presumed disabled under the Grids. (Id. at 6, 15-17.) Second, Plaintiff argues that under the Agency's internal Program Operations Manual System ("POMS"), the ALJ erred in finding that the identified jobs existed in sufficient numbers in the national economy. (Id. at 15-19.)

### A. Relevant Background

At the hearing, the ALJ asked the VE to assume a hypothetical person with Plaintiff's vocational factors — namely, "closely approaching advanced age," "more than a high school education,"[6] and past work experience — as well as the following limitations:

> [she could] lift and carry up to twenty pounds occasionally, ten pounds frequently, could sit six hours in an eight-hour day with normal breaks, stand and/or walk two hours in an eight-hour day, occasional postural activities, no ladders, ropes, or scaffolds, [and] no unprotected heights or dangerous machinery[.]

---

[6] Plaintiff completed a one-year nursing program after obtaining a GED. (AR 32-33.)

(AR 40.)

The VE testified in response that such a person would not be able to perform Plaintiff's past relevant work but could perform the following light, unskilled jobs with a "sit-stand option": (1) ticket taker, of which 105,000 available jobs existed nationally; (2) cashier II, with 1.7 million[7] such jobs; and (3) information clerk, with 900,000 such jobs. (AR 40-41.) The VE further reduced the total available cashier II jobs by 40 percent to account for the sit-stand option, which he clarified as allowing sitting or standing "at will," including sitting for "most of the day" and being on "their feet" for "no more than two hours . . . total." (Id.)

Plaintiff's counsel extensively cross-examined the VE, asking whether those "light" jobs as defined by the DOT were in fact "sedentary" when paired with a sit-stand option because they involved prolonged sitting and two of the three apparently required "lifting no more than 10 pounds." (See, e.g., AR 42 (asking why jobs "that someone could do the majority of the day seated, . . . would be categorized as light as per the DOT"), 44 (noting danger of "using a light job which really should be classified as sedentary, and . . . using it a[s] a weapon to deny claimant benefits").)

The VE generally disagreed, noting that the jobs were possibly "in between" categories. (AR 45.) He acknowledged,

---

[7] The ALJ made a typographical error in summarizing the VE's testimony, stating that "170,000" cashier II jobs existed (AR 19); the same error appears in the Commissioner's briefing (J. Stip. at 13). Plaintiff, however, got the figure right. (See, e.g., id. at 6.)

however, that Plaintiff's counsel's arguments were "well taken" and that "we have materials that come out in the '70s and so forth, and that's what we're utilizing, but in the way things are done today, . . . some of these classifications may be changing." (AR 46.)  He referenced as one of his sources a recent study from Texas, "Questionable Jobs, Changing Classifications," confirming that all three jobs could be performed "either sitting or standing." (AR 44.)  The VE specifically described "ticket taker" as requiring "no lifting" (AR 43), "information clerk" as requiring "no lifting over 10 pounds" (AR 45), and "cashier" as requiring "lift[ing] up to . . . or greater than 10 pounds" (AR 51).  Plaintiff's counsel confirmed that she had no objections to the cashier job as described by the VE, namely, that because of the lifting and "hand motion" involved, it was "definitely light even if it's performed in a seated position." (Id.)  She further acknowledged that "[i]t's just the info clerk and the ticket taker that . . . we have our . . . hang-up on." (AR 51-52.)

    B.    <u>Applicable Law</u>

Jobs are classified as "sedentary, light, medium, heavy, and very heavy" according to their "physical exertion requirements." §§ 404.1567, 416.967.  "Sedentary work" generally involves lifting no more than 10 pounds at a time, with occasional lifting or carrying of small objects and articles, and predominantly features sitting, with walking or standing "required occasionally." §§ 404.1567(a), 416.967(a).  Social Security Ruling 83-10 further explains that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately

6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (describing requirements for "full range" of sedentary work).

"Light work" generally involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," though "the weight lifted may be very little." §§ 404.1567(b), 416.967(b); see SSR 83-10, 1983 WL 31251, at *5. Light work "requires a good deal of walking or standing, or . . . involves sitting most of the time but with some pushing and pulling of arm or leg controls." §§ 404.1567(b), 416.967(b); see SSR 83-10, 1983 WL 31251, at *5. "To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." §§ 404.1567(b), 416.967(b).

At step five of the five-step process, the Commissioner has the burden to demonstrate that the claimant can perform some work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's RFC, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); see 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.960(c). The Commissioner may satisfy that burden either through the testimony of a VE or by reference to the Grids. Tackett, 180 F.3d at 1100-01.

The DOT "is not the sole source of admissible information concerning jobs," and the ALJ "may take administrative notice of any reliable job information, including the services of a vocational expert." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th

Cir. 1995) (alteration and citations omitted). The DOT "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," and a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). "A VE's recognized expertise provides the necessary foundation for his or her testimony," and "no additional foundation is required." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

### C. Substantial Evidence Supported the ALJ's Determination that Plaintiff Could Perform the "Cashier II" Light-Exertion Job

Plaintiff's unchallenged RFC was reduced light work with exertional limitations, falling somewhere between sedentary and light exertion. If the grids do not "completely and accurately represent a claimant's limitations," reliance on the grids is not appropriate and a vocational expert is necessary. Tackett, 180 F.3d at 1101-02. The ALJ therefore properly consulted the VE to determine whether any available light-work jobs would adequately accommodate Plaintiff's specific limitations. See SSR 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983) (noting that when individual's exertional RFC does not coincide with any of defined ranges of work but instead includes "considerably greater restriction(s)," VE testimony can clarify extent of erosion of occupational base); Moore v. Apfel, 216 F.3d 864, 870 (9th Cir. 2000) ("SSR 83–12 directs that when a claimant falls between two grids, consultation with a VE is appropriate."); Thomas v.

1 Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (same).

2 Substantial evidence supported the ALJ's finding that Plaintiff could perform the cashier II position. As Plaintiff conceded at the hearing, the cashier II position was "definitely light" work, "even [when] performed in a seated position," because it involved lifting up to 20 pounds and a lot of "hand motion." (See AR 51.) The ALJ was entitled to rely on the VE's informed, specific, and uncontradicted explanation that consistent with her RFC for a limited range of light work, which Plaintiff has not challenged, she was able to work as a cashier. See Bayliss, 427 F.3d at 1218 ("A VE's recognized expertise provides the necessary foundation for his or her testimony."). Even assuming the other two jobs identified by the VE should have been categorized as sedentary, the VE's unchallenged testimony confirming that Plaintiff could work as a light-exertion cashier rendered any error harmless. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (noting that any error "inconsequential to the ultimate nondisability determination" is harmless); see also McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2010) (as amended May 19, 2011) (applying harmless-error doctrine to Social Security cases). Accordingly, Plaintiff is not entitled to remand on this basis.

D. <u>Plaintiff's Significant-Erosion Argument Under POMS Lacks Merit</u>[8]

Plaintiff argues that the VE's exclusion of 40 percent of the total available cashier II jobs caused a "significant erosion" of the occupational base, necessitating the application of "the lower exertion grid rule" under POMS. (J. Stip. at 15-19.) Plaintiff contends that the ALJ should have applied the next lower exertional category, sedentary work, to account for Plaintiff's reduced "light vocational base." (<u>Id.</u> at 18.)

As an initial matter, Plaintiff misplaces her reliance on POMS DI 25001.001.B.72, <u>available at</u> https://secure.ssa.gov/poms.NSF/lnx/0425001001, which is a "Quick Reference Guide" defining, among other terms, "[s]ignificant erosion" as "[a] considerable reduction in the available occupations at a particular exertional level." It also indicates that in such circumstances, an ALJ should generally "use a lower exertional rule as a framework for a decision." <u>See</u> <u>id.</u> Notably, POMS is an internal agency manual that "does not have the force of law," <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001, 1005 (9th Cir. 2006), and is binding on neither the ALJ nor the Court, <u>see</u> <u>Lockwood v. Comm'r Soc. Sec. Admin.</u>, 616 F.3d 1068, 1073 (9th Cir. 2010) ("POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ."). Moreover, "even if POMS had the force and effect of

---

[8] Plaintiff concedes that the arguments in the Joint Stipulation based on POMS DI 25025.001.B.3, <u>available at</u> http://policy.ssa.gov/poms.nsf/lnx/0425025001 (<u>see</u> J. Stip. at 17, 19), must fail because it has been "repealed" and "is currently not part of the regulations" (<u>id.</u> at 23 n.5).

law, POMS DI 25001.001 ¶ B.71[9] does not mandate the ALJ to use a lower exertional rule level"; "[i]nstead, it merely suggests using a lower exertional rule as a framework if there is a 'considerable reduction in the available occupations at a particular exertional level.'" Durden v. Astrue, No. CV 11-1211-SP, 2012 WL 682880, at *3 (C.D. Cal. Mar. 2, 2012) (citation omitted), aff'd, Durden v. Colvin, 546 F. App'x 690 (9th Cir. 2013).

In any event, Plaintiff's POMS-related argument lacks merit because there was no significant erosion in the total available light-exertional occupations identified by the VE. Even discounting the other two occupations, a 40 percent reduction in 1.7 million cashier II jobs still leaves over 1 million such jobs available in the national economy. See Hawley v. Colvin, No. EDCV 13-00769 AN, 2014 WL 1276194, at *3 (C.D. Cal. Mar. 27, 2014) (finding that VE's express recognition of erosion of available jobs by 75 to 80 percent provided sufficient rationale to support deviation from DOT). That is a significant number of jobs. See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 528-29 (9th Cir. 2014) (holding that 25,000 nationally available jobs presented a "close call" but nonetheless sufficed as "work which exists in significant numbers").

Plaintiff further argues that the ALJ identified only three "occupations" she could perform, two of which might have been erroneous, and that "the sole occupation of a cashier with a 40%

---

[9] Apparently former subsection B.71 was subsequently renumbered as B.72.

14

erosion" was insufficient to warrant application of a light RFC. (J. Stip. at 17-18.) Plaintiff's conclusory assertion is refuted by the plain language of controlling law, §§ 404.1566(b) and 416.966(b), specifying that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [claimant is] able to meet." See <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1043-44 (9th Cir. 2008) (holding that VE's testimony describing a single occupation for which significant number of jobs existed sufficed as substantial evidence); <u>Tamayo v. Colvin</u>, No. CV 12-8484 JCG, 2013 WL 5651420, at *2 (C.D. Cal. Oct. 11, 2013) (finding one occupation sufficient "as long as [it] still has a significant number of positions that exist in the national economy" (quoting <u>Udell v. Colvin</u>, No. 3:12-CV-02548-H-JMA, 2013 WL 4046465, at *7 (S.D. Cal. Aug. 8, 2013), <u>vacated & remanded on other grounds by</u> 628 F. App'x 539 (9th Cir. 2016))). The ALJ further clarified that the three light occupations he identified were merely "representative" of occupations in the national economy that Plaintiff could perform.[10] (AR 19.) In any event, the 1 million cashier II positions nationwide alone sufficed as substantial evidence in support of the ALJ's nondisability finding.

Accordingly, remand is not warranted on this basis.

**VI. CONCLUSION**

Consistent with the foregoing and under sentence four of 42

---

[10] Indeed, no rule requires the VE to list all or even substantially all occupations a claimant can do. Given that the DOT includes thousands of occupations, any such rule would overwhelm the Agency and grind disability proceedings to a halt.

U.S.C. § 405(g),[11] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 29, 2016          _____/s/ Jean Rosenbluth_____
                                        JEAN ROSENBLUTH
                                        U.S. Magistrate Judge

---

[11] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."